THE TRUSTEES OF GRISWOLD COLLEGE v. THE STATE OF IOWA.

1. **Taxation**: EXEMPTION: CHURCH AND SCHOOL PROPERTY. Under section 797 of the Code, all property, including the residences of professors upon the grounds of literary institutions and the dwellings of clergymen owned by religious societies, and used exclusively for such dwellings without income to the owners, which is proper and appropriate to effectuate the objects of the institutions or societies, is exempt from taxation.

2. ———: ———: CONSTITUTIONAL LAW. The statute is not in conflict with section 3, article 1, of the Constitution.

*Appeal from Scott Circuit Court.*

THURSDAY, JUNE 14.

THESE causes were submitted to the court below upon the following agreed facts:

"Griswold College is a corporation organized under the laws of the State of Iowa, for literary, scientific, and educational purposes. It became the owner by donation to, and for its appropriate objects as an institution of learning, of two blocks of land within the City of Davenport * * * * * * bounded on the north by Twelfth street, in said city, on the south by Eleventh street, on the east by Brady street, and on the west by Harrison street, being divided into two nearly equal parts by Main street running north and south; the western portion being now occupied as follows: In the center thereof is the college building; in the northwest corner is a college boarding house;

in the northeast corner stands a college chapel; the eastern portion being occupied as follows, to-wit: the northern part not being used or occupied for any purpose; the center thereof by the Bishop's church; the ground whereon the same stands, having been donated by the said college corpora- tion to the Bishop's church (a corporation organized for relig- ious purposes), and said grounds and building being used solely for purposes of religious worship; one hundred and sixty-five by one hundred and seventy feet in the southeast corner thereof being occupied by a residence used and occu- pied by the Bishop of the Diocese of Iowa, the said ground having been donated to the president and trustees of the Iowa Episcopate Fund (a corporation organized under the laws of the State of Iowa), for the purpose of erecting thereon a building to be used as an Episcopal residence; and one hun- dred and sixty-five by one hundred and seventy feet, in the southwest corner thereof being occupied by a building used for the residence of one of the professors regularly occupying a chair in the said college.

" It is further agreed that the president and trustees of the Iowa Episcopate Fund is a corporation organized for the pur- pose of holding the title to all property belonging to the Dio- cese of Iowa of the Protestant Episcopal Church, a religious institution, for whose use and benefit the title to the said lands is held by said corporation; that the Bishop of Iowa is an officer in said religious institution; that he is also, *ex-officio*, the rector of the said Bishop's church, whose house of worship adjoins said Episcopal residence; and that he is also, *ex-officio*, the president of the said college corporation, and a professor reg- ularly occupying one of the chairs in said college.

"It is further agreed that the said professor's residence is solely occupied as the residence of the Rev. W. H. Barris, D. D., the professor of ecclesiastical history in said college, who, for his services, receives a certain salary and the use of said residence, and is still owned in fee by said college corporation, and that none of said lands are leased or otherwise used for purposes of pecuniary profit.

" And it is further stipulated that the question to be deter-

mined by the court is whether, under the laws of Iowa, and the facts herein admitted and agreed to, the said parcels of land respectively occupied for residences by the said Bishop and by the said professor, with the buildings (being the said two residences) thereon situated, are exempt from taxation. It is admitted that one of said buildings is occupied as the private residence of the person who is at the time Bishop of the Diocese of Iowa, and the other by some professor who is teaching in said college; that the said Bishop's residence cost about $20,000, and the said professor's house about $8,000."

The court below held that the two residences in question, and the land upon which they are situated, being one hundred and sixty-five feet by one hundred and seventy feet in each case, are not exempt from taxation, but are liable to be assessed for taxation. Plaintiffs appeal.

*Brown & Campbell*, for appellants.

*Bills & Block* and *Martin & Murphy*, for appellees.

ROTHROCK, J.—I. It will be observed that the two blocks of land owned by the plaintiffs, parts of which are conceded to be used for college and church purposes, are separated only by Main street running through north and south. The college building, college chapel, and college boarding house, are situated on that part of the land which lies west of Main street. The Bishop's church, the Bishop's residence, and the Professor's residence, are situated on the part of the land lying east of Main street.

1. TAXATION: exemption; church and school property.

The question to be determined is, are the residences and land upon which they are situated exempt from taxation? The one is the residence of a professor in the college, and the title to the land upon which the building stands is in the college corporation. The other is the residence of the Bishop, who is rector of the church, and the title to the land upon which the building is situated is in the religious or church corporation. The two cases are presented upon the same abstract and argument, and in our judgment the questions

presented are so nearly alike that they may be determined together.

The statute of this State exempts from taxation "all public libraries, grounds and buildings of literary, scientific, benevolent, agricultural, and religious institutions and societies, devoted solely to the appropriate objects of these institutions, not exceeding six hundred and forty acres in extent, and not leased or otherwise used with a view to pecuniary profit." Code, Sec. 797.

It is conceded in argument that taxation is the rule and exemption the exception, and that statutes providing for exemption should be strictly construed, so that no property shall be exempt excepting that which is clearly and fairly within the express terms of the law. Keeping this rule in view, are these residences devoted solely to the appropriate objects of the college and the church? If they are, they are exempt from taxation; if they are not, they are liable to taxation the same as the property of a natural person. Many cases are cited by counsel in argument, which, it is claimed, are decisive of the question.

The statute of Massachusetts exempted from taxation "the personal property of literary and scientific institutions incorporated within the commonwealth, and the real estate belonging to such institutions occupied by them or their officers, for the purposes for which they were incorporated."

Under this statute it was held in *Wesleyan Academy v. Wilbraham*, 99 Mass., 599, that a farm used for pasture and tillage grounds, the products of which were used for the support of a boarding house for students attending the academy, was exempt.

The statute of New Jersey exempted "all colleges, academies or seminaries of learning." It was held in *State v. Ross*, 4 Zab., 497, that the dwelling houses erected by the College of New Jersey, for the accommodation of professors and steward of the institution, were exempt.

The statute of Ohio exempted "all lots of ground or land set apart for school houses, academies or colleges, with the buildings thereon occupied for those purposes." It was held

in *Kendrick v. Farquhar*, 8 Ohio, 187, that a professor's house erected on the college grounds and occupied by one of the faculty as a residence was not exempt under the statute. The court say "it must be shown that the building is occupied for *literary purposes.*"

In the State of Indiana the statute exempted "every building erected for religious worship, and the pews and furniture within the same, and the land whereon such building is situate not exceeding ten acres." It was held in *Trustees of M. E. Church v. Ellis*, 38 Ind., 3, that a building erected by the church corporation for the residence of the officiating clergyman, although within twelve feet of the church edifice, was not exempt because it was not a building "erected for religious worship."

The Constitution of the State of Kansas, Sec. 1. Art. 2, exempts "all property used exclusively for State, county, municipal, literary, educational, scientific, religious, benevolent, and charitable purposes." In *Vail v. Beach*, 10 Kansas 214, it was held that a dwelling house in Lawrence owned by the Diocese of the Episcopal church and used by the Bishop exclusively as a residence was not exempt under the Constitution.

These and other cases cited in argument indicate the construction of the laws of the several states in which the cases arose, by the courts of those states respectively, but they are of little aid in construing the statute of this State, because, as it appears to us, all the cases cited are under laws not only different in terms from ours, but different in substance and meaning.

An examination of the cases where it has been held that a professor's house and a parsonage are not exempt will show that the language of the exemption law is more restricted than that of this State. In most of the cases the exemption in case of church property is restricted to buildings erected for religious worship and the lands whereon such buildings are situated. For example, in the State of Minnesota the language of the statute is: "all houses used exclusively for public worship * * and the grounds attached to such building neces-

sary for the proper occupancy, use and enjoyment of the same. * * * " We believe it was correctly held under this statute in *St. Peter's Church v. Board of Coms.*, 12 Minn., 395, that a parsonage was not exempt. The statute by its terms excludes all buildings but those used exclusively for *public worship.*

But to hold that a professor's residence erected and owned by a college, and a parsonage erected and owned by a religious society, are not exempt under our statute, requires that we find that such buildings are not devoted solely to the appropriate objects of the institutions; that is, to the appropriate objects of a college and a religious society. It seems to us that it is not a question as to whether the land and buildings are used solely for literary or religious purposes in the sense that a house of public worship, the audience room of a church, or recitation rooms of a college building are used. This construction of the statute in its strictures would exempt nothing but the college building and the church edifice and the land absolutely necessary for their use. We do not believe that the statute is susceptible of any such narrow and restricted construction.

The buildings and land in question are not leased or otherwise used with a view to pecuniary profit. No parts of the buildings are used for any other purposes than the residence of the professor in one case, and the residence of the Bishop in the other. They are solely used for these purposes. Now, if this use be appropriate, that is, fitting and proper to the objects of the church and the college, the buildings and land are exempt.

It seems to us to be peculiarly fitting and appropriate to the successful operation of the college, the correct deportment of the students, and the proper discipline of the institution, that one or more of the professors should reside upon the college grounds; and it is a well known fact that the tenure of the ministerial office in many of the churches in the west is of very uncertain, and usually brief duration, and in some religious organizations the system of an itinerant ministry is required by the polity of the church. This state of things

requires frequent removals of pastors from one congregation to another, and the holding of such a building and using it solely as the residence of the officiating clergyman is surely apppropriate, fit and proper to the objects of the church, such objects being the propagation of the religious doctrines held and taught by the particular denomination to which the church may belong.

It is proper to say, that exempting these buildings from taxation is not an incentive to these institutions to build up a class of property for the purpose of holding it exempt from taxation. The buildings in question were erected or purchased with the money of the corporations owning them, they are not leased or otherwise used with a view to pecuniary profit, and are used to sustain the college and the church in the same way that the money invested in them would have been used, if the interest of it had been appropriated to pay the rent of residences for the professor and the rector. The money, if not invested in these buildings, and if devoted solely to sustaining the institutions, would be exempt from taxation. Code, section 797, Sub. 3.

It is urged that the use of these buildings is a secular use, not necessarily connected with the college and the church; that they are but the private residences of the persons who occupy them; that the house of a clergyman is no more used to promote the public worship of the church than is that of any lay member.

If it be the correct construction of the statute that the building solely used for literary exercises and instruction, and the church edifice solely used for public worship and the land actually necessary for their use are only exempt, this argument would be sound. But the actual necessities of the institutions is not the rule prescribed by the statute. If it were, the building owned by the college and used as a boarding house for students, and possibly as the residence of the keeper of it, would not be exempt, because the keeping of a boarding house is a secular use and it is not necessary that the students should board in a building owned by the college corporation, and the part used as residence rooms by the keeper is his residence the

same as the keeper of any other boarding house.   So, if a
room in the church edifice should be used as the study or
office of the officiating clergyman, the whole building would
be taxable, because the use of a part of it for an office or
study would be a secular use.   It will surely not be claimed
that the boarding house and church edifice would be taxable
under such circumstances.   The true inquiry should be not
what is actually necessary, but what is proper and appropriate
to effectuate the objects of the institutions.

II.   It is urged that the statute exempting church property
from taxation is in conflict with section 3, Art. 1, of the con-
2. ——: ——: stitution of this State.   The section in question
constitutional
law.              is in these words:   " The general assembly shall
make no law respecting an establishment of religion, or pro-
hibiting the free exercise thereof; nor shall any person be
compelled to attend any place of worship, pay tithes, taxes, or
other rates, for building or repairing places of worship, or the
maintenance of any minister or ministry."

The argument is, that exemption from taxation of church
property is the same thing as compelling contribution to
churches to the extent of the exemption.   We think the con-
stitutional prohibition extends only to the levying of tithes,
taxes, or other rates for church purposes, and that it does not
include the exemption from taxation of such church property
as the legislature may think proper.

III.   We agree with counsel for appellee, that public policy
demands that non-taxpaying property should not be increased;
but our duty is to construe the valid acts of the legislature in
this class of cases, as in all others, as we find them, and by proper
rules of interpretation.   If it be the legislative will that the
exemption of this class of property be further restricted than
it now is, that will can easily be expressed in appropriate leg-
islation.

REVERSED.


SEEVERS, J., *dissenting.*—Being unable to agree to the fore-
going opinion, it is proper I should state my reasons for my
dissent.   Before the property of a church or college can be

exempted from taxation, such property must be such as is "devoted solely to the appropriate objects of such institutions," and even if appropriate and so devoted it must not be "leased or otherwise used with a view to pecuniary profit." It cannot be supposed the houses in question would ever have been built except with the view that in so doing the professor and rector, because of so occupying them, would be willing to take a less salary than they would if compelled to rent houses in which to live with their families. If the college or church does not furnish a house for the professor or rector, they must in some manner procure one, and this involves an additional outlay on their part, and consequently an additional salary must be paid them. These houses are built by the church or college with perhaps two objects in view. One is to have a permanent and convenient home for the clergyman and professor, and the other as a profitable investment for the purpose of enabling them to meet the yearly charge on them in shape of salaries. If the organizations are too poor to build a house, they pay the rent of one in the shape of salary. The rule adopted by the majority of the court, therefore, discriminates in favor of the wealthy church or college.

If the house may be furnished and exempted from taxation, so may the furniture therein, if owned by the organization.

In my judgment if the property is owned and used for the purpose and object of paying or reducing salaries, the same is used for pecuniary profit. It is not essential in order to render it taxable that such should be its exclusive use, but it is sufficient if such is one among other objects. Where anything is devoted to a sole and particular use, it must be used exclusively for such purpose. That it is the intent and meaning of the statute the property should be exclusively used for the appropriate objects of the defendants, I at least cannot doubt. No such thing as a joint use is recognized. If the object of the erection of the houses was proper and appropriate, and the present use thereof in part improper or not appropriate, then the property is taxable. These houses are the private homes of the persons occupying them with their families, and the public together with the church members are excluded therefrom

as much and to the same extent as from the houses and homes of any other citizen of the State. When so used these houses are not exclusively used for the appropriate objects for which the plaintiffs were organized. To accomplish the appropriate objects of the college, it was necessary to employ professors and teachers, but it was not necessary that houses should be erected in which they might live and have homes. If so, a dozen of such houses might have been so erected instead of one, if so many teachers and professors were required. It may be convenient to have the teachers or some of them reside on the college grounds or it may be essential for the better government of the students this should be the case, but I insist when this is done such houses are not exclusively devoted to college purposes. They are the homes of private individuals and their families. If the professor has a study or office in the college building or separate therefrom on the college grounds, or if the rector has such in the church or on land belonging to the organization, it by no means follows, as seems to be assumed by a majority of the court, that such study or office when devoted exclusively to the proper performance of the duties incumbent on these persons would be subject to taxation. In my judgment they would be exempt therefrom.

It is further assumed in the majority opinion, that the adoption of the rule for which I am contending necessarily requires that all the grounds belonging to a church or college should be taxed, except that on which the college or church building is situate. This is a grave mistake. I am not prepared to say that a portion of such grounds could not be used for the purposes of recreation or appropriate ornamentation or cultivated for the purpose of supplying a boarding house used exclusively by students. Especially is this so, if, as in the Massachusetts case cited in the opinion, there was no other convenient way of procuring such board and supplying the boarding house. But if the grounds were used for the ordinary purposes of a farm, and grain and stock raised thereon, as is usual among farmers, then I think a different rule should be established. It is no doubt difficult, and I incline to think

impossible to establish any general rule applicable to all possible cases.

I am strongly impressed with the thought, however, that the majority of the court, while referring to and conceding the rule to be that exemption from taxation constitutes the exception, and that the legislative intent must be clear before it can be allowed to prevail, have practically ignored such rule in the present case.

ADAMS, J., unites with me in this dissent.