**CONGREGATION B'NAI JESHURUN,**
Appellee,

v.

**BOARD OF REVIEW OF the CITY OF DES MOINES, Iowa, Appellant.**

No. 64302.

Supreme Court of Iowa.

Feb. 18, 1981.

Allan A. Herrick and William R. Clark, Jr., of Herrick, Langdon & Langdon, Des Moines, for appellant.

Robert E. Mannheimer and Barbara G. Barrett of Dickinson, Throckmorton, Parker, Mannheimer & Raife, Des Moines, for appellee.

Considered by LeGRAND, P. J., and UHLENHOPP, HARRIS, McCORMICK, and ALLBEE, JJ.

UHLENHOPP, Justice.

This appeal involves statutory construction regarding claimed property tax exemption of housing provided to nonecclesiastical personnel by a religious institution. *See* 71 Am.Jur.2d *State and Local Taxation* § 378 (1973); 85 C.J.S. *Taxation* § 921 (1954); *Annots.*, 55 A.L.R.3d 356, 485 (1974); *cf.* 33 Am.Jur.2d *Federal Taxation* §§ 3281 (exclusion of income by employee), 3305 (deduction of expense by employer) (1981) (similar problem relating to income tax). The statute in question is section 427.1(9), The Code 1979:

The following classes of property shall not be taxed:

. . . .

9. *Property of religious, literary, and charitable societies.* All grounds and buildings used or under construction by

... religious institutions and societies solely for their appropriate objects, ... not leased or otherwise used under construction with a view to pecuniary profit.

We have concluded that the question of exemption in this case ultimately turns on the rule of construction which courts apply to tax exemption statutes. This court stated in *Trustees of Griswold College v. State*, 46 Iowa 275, 278 (1877):

> It is conceded in argument that taxation is the rule and exemption the exception, and that statutes providing for exemption should be strictly construed, so that no property shall be exempt excepting that which is clearly and fairly within the express terms of the law.

This court stated similarly in a case which involved a home owned by a church for its director of Christian education and minister of music, "The current trend throughout the country as shown by recent decisions is to curb and restrict exemptions such as we have here." *Trinity Lutheran Church v. Browner*, 255 Iowa 197, 201, 121 N.W.2d 131, 133 (1963). More recently we stated, "The burden is upon one claiming tax exemption to show the property falls within the exemption statute." *Southside Church of Christ v. Des Moines Board of Review*, 243 N.W.2d 650, 651 (Iowa 1976).

Plaintiff Congregation B'Nai Jeshurun, a religious institution or society, owns a Temple in Des Moines, Iowa. Several years ago it purchased a lot improved with a family dwelling and garage. This property adjoins the Temple grounds.

At first the Congregation rented the dwelling to tenants for $300 per month; the Temple custodian had his own home elsewhere, as the Temple facilities were not suitable for habitation. Later the Congregation required the custodian to live in the dwelling in order to be available in emergencies and on occasions when required to spend evenings at the Temple. Thereafter successive Temple custodians lived in the dwelling with their families. Originally the value of the dwelling to the custodian was agreed to be $200 per month, which was deducted from his wages. Subsequently the figure was reduced to $150 per month. The Congregation also paid $100 per month of utility expense.

This arrangement had advantages. The Temple had experienced vandalism, and the presence of a custodian increased security. His presence also made use of the Temple easier; he was there to admit individuals and groups and to lock and unlock doors. Emergencies were also easier to handle with the custodian at hand. In addition, the Congregation used the garage on the residential property to store Temple equipment. In sum, the use made of the dwelling property was helpful to Temple functions.

The Des Moines city assessor held that although the dwelling was occupied by a custodian, the residence property was nonetheless subject to property taxation as before. The board of review affirmed. On appeals the district court reversed the board's decision and the court of appeals affirmed the district court judgment. We granted further review.

I. The several states have various constitutional or statutory authorizations and restraints on tax exemptions of property of religious institutions. Our statute is quite tightly drawn. It contains three requirements. First, the property must be "used ... by ... religious institutions and societies." We may assume for purposes of decision that this religious institution "uses" the dwelling by housing its Temple custodian there and storing its equipment in the garage. The second requirement, however, narrows the kind of use which qualifies property for exemption: the use by religious institutions and societies must be "*solely* for their appropriate *objects.*" (Emphasis added.) Third, the property must not be used or leased "with a view to pecuniary profit." As with the first requirement, we may assume arguendo that the third requirement is met.

Our problem is with the second requirement. The property must be used for the religious institution's "objects," and "solely" for those objects. Under a strict reading, this would practically confine the exemp-

tion to religious edifices themselves, used only for preaching, teaching, and practicing religion. On the other hand, under an expansive interpretation the second requirement might be enlarged to the housing of rabbis, priests, ministers, assistant rabbis, priests, and ministers, choir directors, organists, administrative directors, custodians, and other personnel who help make the institution function.

II. This court has grappled with the second requirement more than once, not always achieving unanimity. *Griswold* involved two homes on a denominational college campus, one occupied by a bishop who was the college president and, of course, ordained, and the other occupied by one of the professors. By a vote of three-to-two the court held the homes exempt, one home under the religious and the other under the educational exemptions. Addressing the State's argument that the use of the homes was secular, the court stated:

> If it be the correct construction of the statute that the building solely used for literary exercises and instruction, and the church edifice solely used for public worship and the land actually necessary for their use are only exempt, this argument would be sound. But the actual necessities of the institutions is not the rule prescribed by the statute. If it were, the building owned by the college and used as a boarding house for students, and possibly as the residence of the keeper of it, would not be exempt, because the keeping of a boarding house is a secular use and it is not necessary that the students should board in a building owned by the college corporation, and the part used as residence rooms by the keeper is his residence the same as the keeper of any other boarding house. So, if a room in the church edifice should be used as the study or office of the officiating clergyman, the whole building would be taxable, because the use of a part of it for an office or study would be a secular use. It will surely not be claimed that the boarding house and church edifice would be taxable under such circumstances. The true inquiry should be not what is actual-

ly necessary, but what is proper and appropriate to effectuate the objects of the institutions.

46 Iowa at 281–82. The writer of the dissenting opinion concluded his opinion thus:

> I am strongly impressed with the thought, however, that the majority of the court, while referring to and conceding the rule to be that exemption from taxation constitutes the exception, and that the legislative intent must be clear before it can be allowed to prevail, have practically ignored such rule in the present case.

*Id.* at 285.

If a parsonage is to come within the second requirement, then the court had very close facts in the *Trinity Lutheran* case. The director of Christian education and minister of music, Mr. Koester, had practically all the training, attributes, and functions of the pastor except that he was not ordained and he did not preach. The court stated:

> Mr. Koester and his family occupy as their home a residence owned by the church. He meets with congregational members and clergy in his home and maintains an office on the premises. There is nothing in the record to distinguish this residence from any parsonage, manse, rectory, or parish house owned by any church for the use of its pastor.

255 Iowa at 200, 121 N.W.2d at 133. Dividing five-to-four, the court held that *Griswold* and *stare decisis* required the residence of Mr. Koester to be held exempt. The court stated, "In 1877 under an almost identical statutory provision this court considered a situation so similar as to make the pronouncements controlling." *Id.* at 201, 121 N.W.2d at 134. The dissenting opinion concluded:

> If the Griswold case is to be reaffirmed, I would limit it strictly to one dwelling for the principal pastor of the church; I would not extend it to assistant pastors, teaching ministers, or other full-time employees of the church. The modern trend of authority and the increasing-

ly heavy load of taxation upon non-exempt properties demand that we do not extend this unsound doctrine farther.

*Id.* at 207, 121 N.W.2d at 137. That case appears to have been the high water mark in this jurisdiction.

The next case involved a teacher named Helmreich to whom a local church issued a divine call to teach grades one through eight of its day school, where regular courses were taught in addition to religious subjects. With two members of the court taking no part, we held the teacher's dwelling provided by the church was not exempt, saying:

> An exemption in this case would break the bough of logic bent by *Griswold* and *Trinity.* We hold that Lutheran Synod has not carried the burden of proving this situation falls within any fair interpretation of the exemption statute. This residence was not used solely for the appropriate objects of plaintiff religious institution. It was used as the home of an employee and his family. Helmreich had complete right of privacy in his occupancy. He was not required, because of his educational duties, to live in this residence, nor was he required to perform any employment functions there. A church seeking tax exemption for employee housing facilities must do more than merely show the property is owned by the church and occupied by church personnel. From the facts we conclude this house was leased to Helmreich with a view to pecuniary profit.

*Wisconsin Evangelical Lutheran Synod v. Regis,* 197 N.W.2d 355, 357 (Iowa 1972).

In our recent *Southside Church* case the Church owned a residence in which certain parishioners lived rent-free and cared for foster children. We unanimously held the property to be nonexempt. Construing the statute we stated, "Where anything is devoted to a sole and particular use it must be used exclusively for such purpose." 243 N.W.2d at 655.

III. Based largely on the language of their constitutions or statutes, several courts have found dwellings of nonecclesias-tical church personnel to be exempt. *Gull Lake Bible Conference Association v. Township of Ross,* 351 Mich. 269, 273, 88 N.W.2d 264, 266 (1958) (housing and recreational facilities for attendants at Bible camp held within exemption for religious institutions' property used "solely for the purposes for which they were incorporated"); *State v. Board of Foreign Missions,* 221 Minn. 536, 539–40, 22 N.W.2d 642, 644 (1946) (house occupied by executive director of foreign missions exempt under law changed from prior law of "church property used for religious purposes" to current law of "church property"—under prior law even parsonages held secular and nonexempt, *County of Ramsey v. Church of the Good Shepherd,* 45 Minn. 229, 230, 47 N.W. 783, 784 (1891)); *Alton Bay Camp Meeting Association v. Alton,* 109 N.H. 44, 48, 242 A.2d 80, 87 (1968) (housing of manager of religious recreation camp exempt under "buildings used principally for religious training or for other religious purposes, and the lands thereto appertaining"); *People ex rel. Society of the Free Church of St. Mary the Virgin v. Feitner,* 168 N.Y. 494, 496, 61 N.E. 762, 763 (1901) (church engineer's apartment on fourth floor of edifice did not render building nonexempt under exemption for property "used exclusively for carrying out thereupon ... [religious] purposes"); *Shaarai Berocho v. Mayor of the City of New York,* 60 N.Y.Super. (28 Jones & Spencer) 479, 487–88, 18 N.Y.S. 792, 793 (1892) (apartment of janitor living rent-free on third floor of synagogue did not render building nonexempt under exemption for property "exclusively used for purposes of public worship"); *In re Bond Hill-Roselawn Hebrew School,* 151 Ohio St. 70, 72, 84 N.E.2d 270, 272 (1949) (building exempt under exemption for "houses used exclusively for public worship" although janitor lived on second floor); *St. Paul's Evangelical Lutheran Church v. Board of Tax Appeals,* 114 Ohio App. 330, 333, 182 N.E.2d 330, 331 (1955) (parish house exempt although custodian lived in a small part of it—statute quoted under *In re Bond Hill*); *First Methodist Episcopal Church v. City of York,* 67 York Leg.Rec. 29, 29 (Pa. Common Pleas

1953) (church building exempt notwithstanding custodian's apartment in it, under "all churches, meeting houses or other regular places of stated worship").

Other courts have held the housing of nonecclesiastical personnel rendered the property taxable. *Harmon v. North Pacific Union Conference Association of Seventh Day Adventists*, 462 P.2d 432, 439 (Alaska 1969) (houses of minister who was president of statewide operations of religious association, of his minister assistant, and of teacher in parochial school not exempt under exemption for "*the* residence of *the* pastor" (emphasis added)); *In re Walker*, 200 Ill. 566, 570, 66 N.E. 144, 146 (1902) (janitor occupied second floor, congregation used first floor for Sunday School, meetings, and social purposes, building not exempt under constitutional exemption "used exclusively for . . . religious . . . purposes" and statutory exemption "actually and exclusively used for public worship"); *Haven of Grace v. Township of Lakewood*, 19 N.J.Misc. 414, 416, 20 A.2d 518, 519 (N.J.Bd.Tax App.1941) (residence of officers of corporation disseminating Christian gospel material not "exclusively used for religious worship . . . or purposes"); *Congregation K. I. A. P. v. Mayor of the City of New York*, 59 N.Y. Sup. (52 Hun) 507, 508, 5 N.Y.S. 608, 609 (1889) (second floor of synagogue used for religious services, first floor used for baths and janitor's apartment, building not "exclusively used" for public worship); *New Haven Church of Missionary Baptist v. Board of Tax Appeals*, 9 Ohio St.2d 53, 55, 223 N.E.2d 366, 368 (1967) (statute allowed splitting of property, second floor of church occupied by church janitor nonexempt under "houses used exclusively for public worship"); *Midtown Church of Christ, Inc. v. City of Racine*, 83 Wis.2d 72, 75–76, 264 N.W.2d 281, 283 (1978) (pastor's widow living in parsonage not "member of a religious order or community" although each member of congregation a missionary—building not exempt); *cf. Committee on Foreign Missions of the Orthodox Presbyterian Church, Inc. v. Montgomery County Board for the Assessment & Revision of Taxes*, 85 Montg.Co.L.R. 429, 431 (Pa. Common Pleas 1965) (no exemption where second floor occupied by controller of religious organization, under "purely public charity" exemption).

■ IV. After considering the requirement that in order to be exempt, grounds and buildings of religious institutions and societies must be used "solely" for the "appropriate objects" of the institutions and societies, and after strictly rather than broadly construing the quoted language, we hold that housing of a religious institution or society, separate from the religious edifice itself and occupied by nonecclesiastical personnel, does not qualify for property tax exemption. That is the only issue before us. By so holding we do not now indicate any opinion as to the property tax incidents of housing for nonecclesiastical personnel within a religious edifice, or of housing for ecclesiastics.

■ The result is that this residential property is not exempt. Assuming arguendo that the Congregation's use of the garage for storage is a religious use, that use is not sufficient to render the residential property exempt in view of the custodian's occupancy of the dwelling and the "solely" requirement.

The district court and court of appeals erred in overturning the decision of the board of review.

DECISION OF COURT OF APPEALS VACATED, JUDGMENT OF DISTRICT COURT REVERSED.